DECISION AND JUDGMENT ENTRY
{¶ 1} Barbara McCleese Clemmons ("Wife") appeals the judgment of the Scioto County Court of Common Pleas, Domestic Relations Division, overruling her objections and affirming the magistrate's decision finding her in contempt of court, ordering her to purge her contempt, overruling her motion to modify child support, and granting the motion of Ronald McCleese ("Husband") to deviate from the child support guideline calculation. Wife contends that the trial court abused its discretion by finding her in contempt of court for failing to pay Husband $14,800.00 from the proceeds of the sale of the marital residence, where her performance was rendered impossible by the fact that, the proceeds from the sale of the property were only sufficient to pay off the existing mortgage. Because we find that the record contains some competent, credible evidence demonstrating that Wife failed to comply with the terms of the parties' separation agreement, and because Wife failed to satisfy her burden of proving the impossibility of her performance where the evidence demonstrated that she sold the property to family members for far less than its appraised value, giving them all of the equity in the property as a gift, we disagree. Additionally, wife contends that the trial court abused its discretion by overruling her objections, denying her motion to modify child support and granting Husband's motion to deviate from the guideline child support calculation. Because we find that the trial court did not make the requisite statutory findings to support its decision to deviate from the guideline child support calculation, we agree. Accordingly, we overrule Wife's first assignment of error, sustain her second assignment of error, affirm the trial court's judgment in part, reverse it in part and remand this cause for further proceedings consistent with this opinion.
 I. {¶ 2} This matter came before the trial court upon Husband's motion for contempt, Wife's motion to modify child support, and Husband's motion to deviate from the guideline child support calculation.
 {¶ 3} The parties originally married in 1976 and divorced in August 1986. They remarried in February 1987. Three children were born as issue of these marriages, namely Christopher Todd McCleese, who is emancipated, and Collin and Derrick McCleese, who were born on September 19, 1990. In March of 2002, the parties' entered into a separation agreement and the trial court dissolved their second marriage on July 11, 2002.
 {¶ 4} The parties' separation agreement provided that Wife would retain the exclusive right to use and possession of the marital residence and assume sole responsibility for the mortgages, taxes and insurance associated with the property. The agreement also required her to refinance the mortgages to relieve Husband of his liability thereon within ninety days after executing the agreement.
 {¶ 5} Additionally, the separation agreement contained the following provision relevant to the parties dispute herein: "The parties further agree that, notwithstanding any provision herein to the contrary, in the event Wife retains sole and exclusive possession of the real estate and subsequently sells the property to a third person, then the Wife shall pay to Husband at closing from the sale proceeds the sum of Fourteen Thousand Eight Hundred Dollars ($14,800.00) representing Husband's financial contributions to the real estate and improvements thereon from his separate, non-marital property, plus interest thereon at the rate of six percent (6%) per year beginning as of the date this agreement is executed." The agreement further specified that all remaining proceeds were to be placed in a trust fund for the support and welfare of the parties' minor children during their minority, with the remaining principal to be paid to them when they attained the age of twenty-five.
 {¶ 6} The separation agreement designated Wife as the sole residential parent and legal custodian of the parties' minor children and established a minimum visitation schedule for Husband. The parties completed a child support computation worksheet, which reflected that Husband's guideline child support obligation would be $456.17 per month. However, the parties agreed to deviate from the guideline child support calculation, so that neither party was obligated to pay child support to the other. The agreement specified: "Both parties represent that they have adequate financial capacity to support the minor children when the children are to reside with him or her under the terms of the agreement. The parties, therefore, agree to jointly request that the Court deviate from the child support guidelines so as to give effect to their agreement. The parties believe the requested deviation from the guidelines is in the best interests of the minor children since it permits the parties to reach agreement as to a number of issues which substantially affect the children, and since they also believe the children will not want for support when they are with either parent."
 {¶ 7} After the dissolution of the parties' marriage, Wife retained possession of the marital residence, and in August 2003, she refinanced the mortgages to relieve Husband of his liability thereon. At that time, appraiser Sarah Veazey appraised the property at $150,000.00.
 {¶ 8} In November 2003, Wife executed a purchase contract in which she agreed to sell the marital residence to her sister and brother-in-law, Angela and Jamie Tuggle, for $150,000.00, with "all equity over and above $102,000.00 given as gift." The settlement statement from the closing reflects that the Tuggles paid $105,000.00 for the property and received $45,000.00 as a gift of equity. It further reflects that $102,517.78 of the proceeds were used to pay off Wife's mortgage on the property, $1,011.60 to pay Wife's settlement charges, $534.53 to pay county taxes to the date of closing, and Wife received $936.09 in cash. Wife did not inform Husband of the transaction and did not pay Husband the $14,800.00 he was entitled to receive pursuant to the parties' separation agreement.
 {¶ 9} Husband filed a contempt motion against Wife seeking payment of the $14,800.00 plus 6% interest as provided in the separation agreement. After Husband filed his contempt motion, Wife filed a deed of correction with the Scioto County Recorder, in which she represented: "The purpose of this Deed of Correction is to correct the record of Volume 992, Page 692, as to the purchase price. The purchase price was $105,000.00, not $150,000.00. There was no cash surplus of $45,000.00. The $45,000.00 referred to as `cash' on the previous conveyance form was in error and was designated as a `gift of equity' by the mortgage company, Southstar Funding."
 {¶ 10} The essence of Wife's defense to Husband's motion for contempt was that it was impossible for her to pay him $14,800.00 from the proceeds of the sale because she sold the property for an amount roughly equal to her outstanding mortgage balance. Therefore, she claims no "sale proceeds" remained from which to pay Husband.
 {¶ 11} At the contempt hearing, the magistrate heard the testimony of the parties, appraisers Sarah Veasey and Sandy Sinclair, Angela Tuggle, and others. The magistrate found that, while the property needed repairs, the cost of those repairs did not come anywhere near the $45,000.00 equity Wife gifted to her sister and brother-in-law. The magistrate found that Wife's sale of the marital residence to her sister for substantially less than the property was worth was a blatant, fraudulent attempt to avoid paying Husband the $14,800.00 he was entitled to receive pursuant to the separation agreement. Therefore, he recommended that the trial court find Wife in contempt of the court's prior orders based upon her willful, intentional, and fraudulent failure to pay Husband $14,800.00 from the sale of the marital residence. He further recommended that the trial court sentence Wife to ten days incarceration if she failed to purge her contempt by paying Husband $14,800.00 plus interest at the rate of six percent per year from July 11, 2002,[1] or $17,045.00 within one hundred twenty days of the order.
 {¶ 12} Additionally, the magistrate denied Wife's motion to modify child support, while granting Husband's motion to deviate from the child support guideline calculation. In doing so, the magistrate found that, based upon the financial resources of the parties, the vast disparity of the parties' incomes, Husband's reasonable reliance upon the prior deviation in securing housing, and other equitable considerations resulting from Wife's conduct in the sale of the marital residence, it was in the best interest of the children to maintain the parties' agreed deviation from the guideline child support calculation.[2]
 {¶ 13} Wife filed timely objections. The trial court overruled Wife's objections and adopted the magistrate's decision. Wife now appeals raising the following assignments of error: "[I.] The Trial Court erred by finding [Wife] in contempt when clear and convincing evidence was presented as to [Wife's] impossibility to comply with the Order at issue as provided by Ohio Revised Code 2705.02(A) and case law. [II.] The Trial Court erred by denying [Wife's] Motion to Modify Child Support and granting [Husband's] Motion to Deviate contrary to Ohio Revised Code 3119.02, 3119.22 and 3229.23."
 II. {¶ 14} In her first assignment of error, Wife contends that the trial court abused its discretion by overruling her objections and adopting the magistrate's decision finding her in contempt of court for failing to pay Husband $14,800.00 from the proceeds of the sale of the marital residence. She argues that the trial court gave no weight to the evidence she submitted to prove that it was impossible for her to comply with the terms of the separation agreement. Specifically, she argues that the trial court ignored the testimony of her appraiser, who testified that the value of the property, as she saw it in September 2004, was only $110,000.00, and the corrected conveyance fee statement, which Wife claims demonstrates that the sale price of the property was only $105,000.00.
 {¶ 15} We review a trial court's finding of civil contempt for abuse of discretion. State ex rel. Celebrezze v. Gibbs
(1991), 60 Ohio St.3d 69, 75; State ex rel. Ventrone v. Birkel
(1981), 65 Ohio St.2d 10, 11. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When reviewing a judgment for abuse of discretion, we must not substitute our judgment for that of the trial court. In re JaneDoe I (1991), 57 Ohio St.3d 135, 138. Instead, we give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 16} Generally, a person charged with contempt for violating a court order may defend herself by proving that it was not within her power to obey the order. In re Purola (1991),73 Ohio App.3d 306, 313, citing Courtney v. Courtney (1984),16 Ohio App.3d 329, 334, citing State ex rel. Cook v. Cook (1902),66 Ohio St. 566. However, the person asserting the defense of impossibility bears the burden of proving that her failure to obey was due to her inability to render obedience. Id. at 313-314; Bishop v. Bishop, Stark App. No. 2001CA00319, 2002-Ohio-1861. Moreover, logic dictates that the condition rendering performance impossible must be beyond the control of the person asserting the defense. See, e.g., Sullivan v.Sullivan (1996), 76 Ohio Misc.2d 1, 4; Skilton v. Perry LocalSchool Dist. Bd. of Educ., Lake App. No. 2001-L-140, 2002-Ohio-6702, ¶ 26, citing Truetried Serv. Co. v. Hager
(1997), 118 Ohio App.3d 78, 87 (holding that in order for impossibility of performance to constitute a defense in a breach of contract action, performance must be rendered impossible without fault of the party asserting the defense).
 {¶ 17} Here, Wife does not dispute that she failed to pay Husband the $14,800.00 plus interest specified in the separation agreement. Rather, she contends that it was impossible for her to comply with the terms of the agreement because the proceeds from the sale of the marital residence were only sufficient to pay off the existing mortgage on the property. She asserts that the real property needed substantial repairs that she could not afford to make, and that the house could not be listed for sale to the general public without the completion of the most significant repairs — namely the installation of an independent septic system and water tap. Testimony revealed that the home's existing systems improperly tap into the systems of the home next door, which belongs to Wife's parents.
 {¶ 18} Wife's sister, Angela Tuggle, testified that she and her husband signed the purchase contract, which stated the purchase price was $150,000.00, but further provided that all equity above $102,000.00 was given to them as a gift. In her testimony, Wife stated that she was aware that appraiser Sara Veazey had appraised the home at $150,000.00 when she refinanced the mortgages in August 2003. She also acknowledged that she signed a settlement statement at the sale closing, which specifically stated that she was giving her sister and brother-in-law a gift of equity in the amount of $45,000.00. Both Wife and her sister testified that the gift of equity was necessary due to the numerous repairs the property needed.
 {¶ 19} Ms. Veazey testified that she was unaware of the problems with the property's septic system and water line at the time she appraised the property at $150,000.00 in both August and November of 2003. However, she indicated that those two problems would only decrease the value of the property by the cost to cure them. Evidence adduced at trial demonstrated that it would cost approximately $2,500.00 to correct the septic issues, and $1,200.00 to $1,500.00 to install a proper water tap. Additionally, Ms. Veazey testified that other defects alleged by Wife and her sister (including the furnace and air conditioner, curling congoleum and damaged sub-flooring in the downstairs bathroom, water damage to a downstairs ceiling, a broken window, and missing trim in the loft area) would not affect her appraisal.
 {¶ 20} Wife contends that the testimony of Sandy Sinclair and Ms. Veasey supports her contention that the house could not be listed for sale without the completion of the repairs to the septic and water systems. However, our review of their testimony reveals that these witnesses made no representation whatsoever about the effect of the property's defects upon the listing of the property for sale on the open market. Instead, the transcript reveals that both witnesses testified that the repairs would have to be made before the completion of the sale. In fact, Veasey stated that typically the mortgage lender would have her find out how much it would cost to correct the defects, and the money for the repairs would be held out of closing in an escrow fund until the repairs were completed.
 {¶ 21} Thus, according to Veasey's testimony, Wife could have listed the home for sale to the public, disclosed the defects to potential buyers, and then either she or the buyer could have completed the necessary repairs with money reserved from the sale proceeds. Instead, the evidence adduced at trial demonstrates that Wife elected to sell the property for substantially less than its appraised value and give all of the equity to her sister and brother-in-law without even attempting to sell the property on the open market.
 {¶ 22} Wife also contends that the trial court ignored Ms. Sinclair's testimony and the September 30, 2004 appraisal, which valued the property at $110,000.00. However, the record also contained Ms. Veasey's appraisal, valuing the property at $150,000.00, and her testimony that the problems with the septic and water systems would only decrease the appraised value by the cost of the repairs — about $4,000.00. Here, the trial court found Ms. Veasey's testimony regarding the value of the property to be more credible. "Where a court's factual finding is based on its resolution of conflicting evidence, this court will not substitute its judgment for that of the trial court." Davis v.Continental Ins. Co. (Apr. 29, 1997), Franklin App. No. 96APE06-795.
 {¶ 23} Next, Wife contends that the deed of correction and corrected conveyance fee statement demonstrate that a mistake was made at the time she sold the property to her sister. However, we note that those documents serve only to correct the public records regarding the actual purchase price of the property where the original conveyance fee statement inaccurately reflected that the Tuggles obtained a $105,000.00 mortgage and paid an additional $45,000.00 in cash for the property. However, the corrected documents do nothing to dispute the evidence that Wife elected to sell the property for far less than its appraised value, giving all of the equity in the property to her sister and brother-in-law at the expense of Husband and the parties' minor children.
 {¶ 24} Based upon the foregoing, we find that the record contains some competent, credible evidence to support the trial court's findings that: (1) the marital residence was worth approximately $143,658.00 after allowing a credit for repairs to the septic, water, and heating and cooling systems; and (2) Wife unilaterally elected to sell the property to her sister for only $105,000.00, thereby giving her sister and brother-in-law a gift of equity worth approximately $40,000.00. Additionally, we find the record contains some competent, credible evidence to support the trial court's determination that Wife's own, voluntary actions in selling the real property for substantially less than its appraised value caused the monetary shortfall that Wife now complains makes it impossible for her to comply with the terms of the separation agreement. Therefore, we cannot find that the trial court abused its discretion by finding Wife in contempt of court for failing to pay Husband $14,800.00 upon the sale of the marital residence as required by the separation agreement. Nor can we find that the trial court abused its discretion in rejecting Wife's claimed defense of impossibility of performance, when her own actions caused the alleged impossibility. Accordingly, we overrule Wife's first assignment of error.
 III. {¶ 25} In her second assignment of error, Wife contends that the trial court erred in denying her motion to modify child support where she presented evidence of a change in circumstances sufficient to warrant modification. Additionally, she contends that the trial court erred in granting Husband's motion to deviate from the guideline child support calculation because the court failed to explain why the guideline amount of support was unjust or inappropriate, and not in the best interests of the children. Moreover, Wife argues that the trial court denied her motion and granted Husband's motion to punish her for her alleged contempt of the court's previous orders.
 {¶ 26} We review child support matters for abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Accordingly, we will only reverse a trial court's judgment regarding child support matters if it is arbitrary, unreasonable or unconscionable. Blakemore, supra, at 219.
 {¶ 27} When considering a motion to modify child support, R.C. 3119.79(A) provides a trial court must compare the existing child support obligation to the amount of support that would be required to be paid under the child support guideline worksheet. If the court determines that the resulting child support obligation is ten percent greater or less than the existing child support order, the court must find that there is a substantial change of circumstances warranting a modification of the child support amount. Id. The Ohio Supreme Court has held "when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met." DePalmo v. DePalmo (1997),78 Ohio St.3d 535, 540.
 {¶ 28} Here, the existing child support order required neither party to pay child support to the other. However, based upon the parties' current incomes, Husband's annual guideline child support obligation would be $4,810.86. Therefore, pursuant to R.C. 3119.79(A) and DePalmo, the trial court should have found that a substantial change of circumstances existed to warrant a modification of child support. Then the court could continue its analysis to determine whether it was appropriate to deviate from the guideline support obligation.
 {¶ 29} R.C. 3119.22 provides that a court may deviate from the guideline child support calculation if it determines, based upon the factors and criteria enumerated in R.C. 3119.23, that the guideline support calculation would be "unjust or inappropriate and would not be in the best interest of the child." The statute further provides that if the court deviates from the child support guideline, it must enter in the journal: (1) the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation; (2) its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child; and (3) findings of fact supporting that determination. Further, the Ohio Supreme Court has held that: "Any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." Marker v.Grimm (1992), 65 Ohio St.3d 139, paragraph three of the syllabus. See, also, DePalmo at 538.
 {¶ 30} Here, the trial court's journal entry simply states: "It is the FINDING and ORDER of the Court that the Motion to Modify Child support is NOT WELL-TAKEN and the Motion to Deviate from Child Support Guidelines is WELL-TAKEN and the same is GRANTED. Essentially, the Court ORDERS that the prior deviation in child support with no obligation being Ordered for Father shall remain in effect. Accordingly, the Court need not address allocation of the tax exemptions for the minor children inasmuch as child support has not been altered. The tax exemptions for the minor children shall remain as previously allocated." (Emphasis in original.)
 {¶ 31} The trial court's entry does not state the amount of the child support obligation calculated pursuant to the guideline worksheet. Nor does it explicitly find that the guideline child support amount "would be unjust or inappropriate and would not be in the best interest of the child[,]" or contain findings of fact to support such a determination. Thus, the trial court failed to enter in its journal any of the findings required by R.C. 3119.22
and Marker to support its deviation from the child support guideline calculation.
 {¶ 32} Although the court does state in its journal entry that "[t]he Magistrate's Decision is CONFIRMED[,] the magistrate's decision is not attached to the judgment entry. (Emphasis in original.) Therefore, any findings or determinations the magistrate made regarding the child support guideline calculation and the guideline support obligation being unjust or inappropriate and not in the best interest of the children are not part of the trial court's journal entry as required by R.C.3119.22. See, e.g., Linam v. Linam, Columbiana App. No. 02 CO 60, 2003-Ohio-7001, at ¶ 22 (Holding it is not reversible error to fail to place one of the statutorily mandated findings supporting a child support deviation in the entry where that finding is contained in an attachment because it is well-established that an attachment to a judgment entry is part of that judgment entry.) Moreover, we note that even if the magistrate's decision was attached to and incorporated into the trial court's entry, that decision does not contain all of the findings required by R.C. 3119.22.
 {¶ 33} Based upon the foregoing, we find that the trial court abused its discretion in overruling Wife's motion to modify child support and granting Husband's motion to deviate from child support guidelines without entering in its journal: (1) the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation; (2) its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child; and (3) findings of fact supporting that determination. Accordingly, we sustain Wife's second assignment of error.
 IV. {¶ 34} In conclusion, because we find that the record contains some competent, credible evidence demonstrating that Wife failed to comply with the terms of the parties' separation agreement, and because Wife failed to satisfy her burden of proving the impossibility of her performance where the evidence demonstrated that she sold the property to family members for far less than its appraised value, giving them all of the equity in the property as a gift, we overrule Wife's first assignment of error. Additionally, we sustain Wife's second assignment of error because we find that the trial court did not make any of the statutory findings in its journal entry, as required by R.C.3119.22, to support its decision to deviate from the guideline child support calculation. Accordingly, we affirm the trial court's judgment in part, reverse it in part and remand this cause for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSEREMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.
[1] Although the issue is not currently before us, we note that pursuant to the terms of the separation agreement, husband was entitled to receive interest from the date that the parties executed the separation agreement on March 27, 2002, rather than July 11, 2002, the date that the trial court issued the decree of dissolution.
[2] Although the entry Wife appeals reserved the issue of Husband's attorney fees for further hearing, we note that the parties resolved that issue in an August 31, 2005 memorandum of agreement and a November 14, 2005 agreed journal entry, and that we sua sponte supplemented the record transmitted on August 3, 2005 with those documents.