[Cite as *Clyburn v. Gregg*, 2011-Ohio-5239.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| Mark P. Clyburn, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 11CA3211 |
| v. | : | |
| | : | DECISION AND |
| Heidi Jo Gregg, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: October 7, 2011 |

_____

APPEARANCES:

Jennifer L. Ater, Ater, Schmidt & Wissler, LLP, Chillicothe, Ohio, for Appellant.

Robert J. Judkins, Judkins & Hayes, LLC, Greenfield, Ohio, for Appellee.
_____

Kline, J.:

**{¶1}** Heidi Jo Gregg (hereinafter the "Mother") appeals the judgment of the Ross County Court of Common Pleas, Juvenile Division. Mother contends that the trial court erred by finding Mother in contempt of court. Because no penalty has been imposed against Mother for her contempt citation, there is no final appealable order. Thus, we lack jurisdiction to consider Mother's assignment of error challenging her contempt citation. Next, Mother contends that the trial court erred (1) by terminating the Shared Parenting Plan that governed the parental rights concerning Mother's and Mark Clyburn's (hereinafter the "Father") minor child and (2) by designating Father as the child's residential parent. Because the trial court did not abuse its discretion when it determined that it was in the child's best interest to terminate the Shared Parenting Plan and designate Father as the child's residential parent, we disagree. Mother next

contends that the trial court erred when it failed to award Mother parenting time in excess of the trial court's standard companionship schedule. Because the evidence demonstrates that the trial court did not abuse its broad discretion in making custody determinations, we disagree. Next, Mother contends that the trial court erred when it failed to find Father in contempt of court. Because the evidence was insufficient to find that Father disobeyed any of the trial court's orders, we disagree.

I.

{¶2}      Mother and Father are the parents of a minor child (hereinafter the "Child"). Child was born on October 14, 2005. Mother and Father have never been married. On November 9, 2006, the juvenile court approved a Shared Parenting Plan for Mother and Father regarding Child's care. Under the plan, Child resided primarily with Mother, and Mother was designated the primary parent for pre-school and school placement purposes. Child resided with Father on alternate weekends plus a three-hour visitation one day a week. After Child reached eighteen months of age, Child's three-hour visitation increased to twice a week. The plan also called for Father to have consecutive-week visitations beginning in Summer 2007. Over time, the communication between Mother and Father steadily deteriorated. As a result, the parties have engaged in extensive litigation regarding the care and custody of Child.

{¶3}      As indicated, the Shared Parenting Plan governed, among other things, Father's visitation with Child for Summer 2007. The plan entitled Father to three consecutive weeks with Child. And "said weeks [were] to be agreed upon by the parties no later than May 13, 2007, making every reasonable effort to accommodate each

other's work/school/vacation schedules and to be exercised around Mother's and Father's Birthdays." Article V, Section E, of the Shared Parenting Plan.

{¶4}     Mother and Father did not agree on Father's summer 2007 visitation with Child by May 13, 2007. So on May 16, 2007, Father provided Mother written notice of the three weeks he intended to have Child for the summer. Mother informed Father that, because there had not been an agreement regarding summer visitation by May 13, Mother was denying Father his entire three-week summer visitation.

{¶5}     After this dispute, Father and Mother began filing a series of motions against each other. On July 18, 2007, Father filed a contempt motion against Mother regarding the denial of his summer visitation. And Mother filed a Motion for Ex Parte Relief and a Motion to Terminate Shared Parenting and Allocate Parental Rights on October 11, 2007. The basis for Mother's ex parte motion was that, allegedly, Father was physically abusing Child. (A magistrate held hearings on this matter in March 2008 and determined that there was insufficient evidence of the alleged abuse.)

{¶6}     On October 22, 2007, Father filed a Motion to Review and Modify the Shared Parenting Plan and a Motion for Psychological Examination of the Parties. And on November 28, 2007, Father filed a supplemental contempt motion, which related to alleged additional instances where Mother denied Father visitation with Child. Mother then filed a contempt motion against Father on December 4, 2007, for Father's alleged failure to pay his share of Mother's medical bills and to provide Child with health insurance. And on April 2, 2008, Father filed a Motion to Terminate the Shared Parenting Decree and Designate Father as Residential Parent.

{¶7}    In addition to the disputes regarding visitation, Mother and Father disagreed about Child's developmental delays.  When Child was nearly two years old, Father expressed to Mother his concern that Child's speech development was delayed. Mother disagreed and asserted that Child had a vocabulary of about seventy-five words. Father was unconvinced, and he eventually enrolled Child in the Highland County Help Me Grow program when Child was about two-and-a-half years old.  Child tested below average or well below average in many developmental categories.  Father instructed the Help Me Grow staff not to inform Mother of Child's participation in the program. Father testified that he did this because he feared Mother would disrupt Child's participation.

{¶8}    In her recommendation to the trial court, the guardian ad litem noted that Child appeared to benefit from his participation in the Help Me Grow program.   The guardian indicated that Child did not speak at all when she first met Child, but his communication improved after Father enrolled Child in the Help Me Grow program.  The guardian also noted that she believed that Mother's "exclusion [from the Help Me Grow program] was warranted."  Guardian ad litem's Recommendation at 5.  The guardian noted that, upon learning of Child's participation in the program, Mother quickly attempted to transfer Child from the Highland County Help Me Grow program to a program in Ross County.

{¶9}    A magistrate held hearings on the pending motions over three days during June and July 2008.  Following the hearings, the guardian ad litem recommended termination of the Shared Parenting Plan and that Father be designated as Child's residential parent with "liberal" visitation awarded to Mother.

**{¶10}** On October 29, 2008, the magistrate issued an order, which found Mother in contempt for failing to comply with the summer visitation provisions of the Shared Parenting Plan. And on March 12, 2009, the magistrate issued findings of fact and conclusions of law pertaining to the remaining issues in the case. The magistrate's order ruled that the Shared Parenting Plan should be "vacated" and that Father be designated the residential parent. The order also determined that Father was not in contempt as Mother had alleged. Mother objected to the magistrate's order. The trial court adopted the magistrate's order and supplemented one of the magistrate's conclusions of law. Mother appealed the trial court's order, but we remanded because the trial court's entry was not a final appealable order.

**{¶11}** On August 20, 2009, the trial court issued another entry, and Mother timely appealed. We concluded that the trial court's entry was void for vagueness because it was unclear whether the trial court was terminating or modifying the parties' Shared Parenting Plan. Thus, we dismissed the appeal for lack of a final appealable order. See *Clyburn v. Gregg*, Ross App. No. 09CA3115, 2010-Ohio-4508 (hereinafter "*Clyburn I*").

**{¶12}** In response to our decision in *Clyburn I*, the magistrate issued another order on December 6, 2010, in which he made findings of fact and conclusions of law. Mother timely filed objections and amended objections to the magistrate's order. And on January 14, 2011, the trial court issued a judgment entry in which it adopted and supplemented the magistrate's order. The trial court ruled that the Shared Parenting Plan be *terminated*, and the court designated Father as Child's residential parent. The trial court also granted Mother companionship pursuant to the court's standard

companionship schedule.  Finally, the trial court ruled that there was not sufficient evidence to find Father in contempt of court.

**{¶13}**    Mother appeals and asserts the following assignments of error: I. "The trial court erred and abused its discretion to the prejudice of Appellant by approving the magistrate's decision which terminated the parties' Shared Parenting Plan and designated Appellee as the custodial parent of the parties' minor child, as such was an error of law and against the manifest weight of the evidence and an abuse of discretion."  II.  "The trial court erred and abused its discretion to the prejudice of Appellant by approving the magistrate's decision which failed to award Appellant parenting time with the parties' minor child in excess of the court's standard companionship schedule, as such was against the manifest weight of the evidence and an abuse of discretion."  III.  "The trial court erred and abused its discretion to the prejudice of Appellant in failing to find Appellee in contempt of court."  And, IV.  "The trial Court [sic] erred and abused its discretion to the prejudice of Appellant in finding Appellant in contempt of court."

II.

**{¶14}**    We consider Mother's assignments of error out of order, and we begin with her fourth assignment of error.  In her fourth assignment of error, Mother argues that the trial court abused its discretion when it found her in contempt of court.

**{¶15}**    "In order for there to be a final order in contempt of court proceedings, there must be both a finding of contempt and the imposition of a sanction or penalty.  The mere adjudication of contempt of court is not a final appealable order until a sanction or penalty is also imposed."  *Cooper v. Cooper* (1984), 14 Ohio App.3d 327, at paragraph

one of the syllabus.  See, also, *Clyburn I* at ¶18; *Slone v. Slone*, Pike App. No. 01CA665, 2002-Ohio-687 ("Until a court issues a penalty or sanction [in a contempt case], no final appealable order exists.").

**{¶16}**    On October 29, 2008, the magistrate found Mother in contempt of court based on her denial of Father's summer 2007 visitation.  That same order set the matter for sentencing before the common pleas judge on November 6, 2008.  The court eventually continued this hearing until June 18, 2009, the same date Mother filed her notice of appeal in *Clyburn I*.

**{¶17}**    Upon review of the record, the trial court has not imposed any penalty against Mother based on the magistrate's ruling that Mother was in contempt.  As such, there is no final appealable order with respect to Mother's contempt citation.  Thus, we are without jurisdiction to consider Mother's fourth assignment of error, and we accordingly dismiss it.

**{¶18}**    Nevertheless, "an appeal raising issues other than the finding of contempt may proceed according to rule as to those assignments of error not involving the trial court's finding of contempt." *Lalli v. Lalli* (Mar. 16, 2001), Ashtabula App. No. 98-A-0096.

III.

**{¶19}**    In her first assignment of error, Mother contends that the trial court abused its discretion (1) by terminating the Shared Parenting Plan because there was not a significant change in circumstances to justify terminating the plan and (2) by designating Father as Child's residential parent.

**{¶20}**     "Although a trial court must follow the dictates of R.C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities." *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, at ¶13, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74; *Parker v. Parker*, Franklin App. No. 05AP-1171, 2006-Ohio-4110, at ¶23. "An appellate court must afford a trial court's child custody determinations the utmost respect, 'given the nature of the proceeding[,] the impact the court's determination will have on the lives of the parties concerned[, and the fact that] [t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" *H.R.* at ¶13, quoting *Pater v. Pater* (1992), 63 Ohio St.3d 393, 396 (alterations sic) (other internal quotation omitted).

**{¶21}**     Thus, we review "a trial court's decision to terminate a shared parenting plan under an abuse of discretion standard." *In re J.L.R.*, Washington App. No. 08CA17, 2009-Ohio-5812, at ¶30. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶22}**     Mother argues that there was not a sufficient change in circumstances to justify the trial court's termination of the Shared Parenting Plan. A trial court can terminate a shared parenting plan under R.C. 3109.04(E)(2)(c), which provides: "The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting

decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children."

**{¶23}** Despite Mother's arguments, a trial court does not need to find that there was a "change in circumstances" in order to terminate a shared parenting plan. *In re J.L.R.* at ¶28 ("[T]he trial court explicitly stated that it terminated the parties' prior shared parenting plan under R.C. 3109.04(E)(2)(c), which does not require a change in circumstance finding."); see, also, *Cochran v. Cochran*, Lawrence App. No. 10CA15, 2011-Ohio-1644, at ¶4, fn.1; *Francis v. McDermott*, Darke App. No. 1753, 2009-Ohio-4323, at ¶10; *Beismann v. Beismann*, Montgomery App. No. 22323, 2008-Ohio-984, at ¶8, quoting *Goetze v. Goetze* (Mar. 27, 1998), Montgomery App. No. 16491 ("Significantly, nothing in R.C. 3109.04(E)(2)(c) requires the trial court to find a change in circumstances in order to terminate a shared parenting agreement."). But, see, *Sims v. Durant*, Fairfield App. No. 2008-CA-27, 2008-Ohio-6442, at ¶10.

**{¶24}** R.C. 3109.04(E)(2)(c) requires only that shared parenting not be in the child's best interest to justify a trial court's termination of a shared parenting plan. See *In re J.L.R.* at ¶31. Under R.C. 3109.04(F)(2), the factors a court must consider when determining whether shared parenting is in the best interest of a child are as follows: "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent; (d) The geographic proximity of the parents to each other, as the proximity

relates to the practical considerations of shared parenting; (e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

**{¶25}** R.C. 3109.04(F)(2) also directs a trial court to consider the factors enumerated in R.C. 3109.04(F)(1) when deciding whether to terminate a shared parenting plan. The factors from R.C. 3109.04(F)(1) relevant to the evidence presented at trial are: "(a) The wishes of the child's parents regarding the child's care; * * * (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[.]"

**{¶26}** (Additionally, R.C. 3109.04(F)(2) also directs trial courts to consider the factors enumerated in R.C. 3119.23. We note, however, that the factors listed in that statute are not pertinent to the issues presented in this appeal.)

**{¶27}** Mother presents several arguments in support of her claim that the trial court abused its discretion when it terminated the Shared Parenting Plan and designated Father as Child's residential parent. Mother asserts that she had been Child's primary caregiver. She claims that she ensures that Child has a close relationship with her and Father's family. Mother also states that Child has become well adjusted to her home and that she has been flexible in re-arranging parenting time for Father. Consequently,

Mother argues that "[i]t is clear that the trial court failed to consider any of [the statutory factors from R.C. 3109.04(F)] in its custody ruling, and failed to consider the physical abuse of the child by [Father.]" Appellant's Brief at 14.

{¶28} The record, however, demonstrates that the trial court did consider the statutory factors from R.C. 3109.04(F). See Judgment Entry at 6 (noting that the trial court "considered the factors set forth in R.C. 3109.04(F)"). And after considering those factors, the trial court determined that it was in Child's best interest (1) to terminate the Shared Parenting Plan and (2) to designate Father as Child's residential parent.

{¶29} First, with regard to Mother's allegations of child abuse against Father, the magistrate held a separate hearing on the matter. At the conclusion of the hearing, the magistrate determined that there was insufficient evidence to support Mother's accusations.

{¶30} Regarding Mother's other assertions, there is indeed evidence to support her arguments. The evidence shows that Mother had been Child's primary caregiver. Additionally, there is evidence that Mother made efforts to foster a relationship with her family as well as with members of Father's family. And at times, Mother had been flexible regarding re-arranging parenting time with Father.

{¶31} The trial court's judgment entry, however, makes clear that the court considered a multitude of factors to reach its decision. The trial court specifically ruled that "the evidence establishes that [Father] is able to provide a stable home for [Child] and that [Child] has a loving relationship with [Father], [Child's] step-mother and his step-brother, * * * and is well adjusted in [Father's] home. The evidence further

indicates that [Mother's] behavior and actions have not always been in [Child's] best interest." Judgment Entry at 4.

**{¶32}** The determination that Mother's "behavior and actions have not always been in [Child's] best interest" centers around (1) Mother's denial of some of Father's visitation rights and (2) Mother's response to Child's developmental delays. The Shared Parenting Plan granted Father three consecutive weeks of visitation with Child during the summer. And the plan called for the parties to agree on a summer visitation schedule no later than May 13. In 2007, the parties were unable to agree on a schedule, so Father notified Mother on May 16 the three weeks of visitation he intended to take. Mother denied Father his three weeks of summer visitation for 2007, and she based her decision on Father's failure to notify Mother of his summer visitation plans by May 13. While the Shared Parenting Plan does state that the parties are to agree on a summer visitation schedule no later than May 13, there is no provision stating that Father forfeits his summer visitation if the parties fail to agree on a schedule by that date.

**{¶33}** The evidence also shows that, on another occasion, Mother denied Father a visit with Child because Father was allegedly over a half hour late to pick Child up. Father, however, testified that he attempted to call Mother several times to notify her that he was running late. Mother and her grandmother, who were both caring for Child at the time, claimed that they did not answer the phone because they were each too ill. (Neither Mother nor her grandmother had a persuasive explanation for why it was better for Child to remain with them, even though they were apparently too ill to answer the phone.)

{¶34}    In addition to Mother's denial of Father's visitation rights, the evidence demonstrates that Mother's response to Child's developmental delays was not in Child's best interest.  Father expressed concern regarding Child's delayed speech development, but Mother insisted that Child's speech was not delayed.  Mother claimed Child had a seventy-five-word vocabulary.  Despite Mother's assertion, Father enrolled Child in the Highland County Help Me Grow program when Child was about two-and-a-half years old.  And Child tested below average or well below average in many developmental categories.  In her recommendation to the trial court, the guardian ad litem noted that Child appeared to benefit from his participation in the Help Me Grow program.  The guardian indicated that Child did not speak at all when she first met Child, but his communication improved after Father enrolled Child in the Help Me Grow program.

{¶35}    Father instructed the Help Me Grow staff not to inform Mother of Child's participation in the program because he feared Mother would disrupt Child's participation.  And the guardian ad litem stated that she believed that Mother's "exclusion was warranted."  Guardian ad litem's Recommendation at 5.  The guardian noted that, upon learning of Child's participation in the program, Mother quickly attempted to transfer Child from the Highland County Help Me Grow program to a program in Ross County.

{¶36}    Thus, the evidence supports the trial court's conclusion that Mother's "behavior and actions have not always been in [Child's] best interest."  The evidence shows that Mother, at times, prevented Father from exercising his visitation rights.  And

the record demonstrates that Mother's response to Child's developmental delays was not "always" in Child's best interest.

**{¶37}** Finally, the guardian ad litem recommended termination of the Shared Parenting Plan and that the court designate Father as Child's legal custodian. The Guardian stated: "[B]ecause [Father] seems to have put [Child's] best interests first and because he has taken actions to foster [Child's] development, it is my recommendation that the Shared Parenting Plan be terminated and that [Father] be ordered the legal custodian of [Child.]" Guardian ad litem's Recommendation at 7.

**{¶38}** The record shows that the trial court considered the factors from R.C. 3109.04(F) in reaching its decision to terminate the Shared Parenting Plan and designate Father as Child's residential parent. Furthermore, we are mindful of our standard of review. Under the abuse-of-discretion standard, "a reviewing court may not merely substitute its judgment for that of the trial court." *Melvin v. Martin*, Lawrence App. No. 05CA44, 2006-Ohio-5473, at ¶7, citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 137–38. The evidence supports the trial court's conclusions. Therefore, the trial court did not abuse its discretion by terminating the Shared Parenting Plan and designating Father as Child's residential parent. Accordingly, we overrule Mother's first assignment of error.

IV.

**{¶39}** In her second assignment of error, Mother argues that the trial court abused its discretion when it failed to award parenting time to Mother in excess of the court's Standard Companionship Schedule.

**{¶40}** As stated above, the trial court "enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities." *H.R.* at ¶13 (citations omitted). This broad discretion also applies to custody proceedings. *In re J.C.*, Scioto App. No. 09CA3334, 2010-Ohio-4086, at ¶9.

**{¶41}** "Upon the termination of a prior final shared parenting decree under [R.C. 3109.04(E)(2)(c)], the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of [R.C. 3109.04] as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d).

**{¶42}** "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). When determining the best interest of the children for purposes of allocating parental rights and responsibilities, a trial court must consider the factors enumerated in R.C. 3109.04(F)(1). See *In re J.L.R.* at ¶33.

**{¶43}** (The best-interest-of-the-child factors from R.C. 3109.04(F)(1), which are relevant to the evidence presented in this case, are listed above in our analysis of Mother's first assignment of error.)

**{¶44}** The trial court designated Father as Child's residential parent, and the court granted Mother companionship pursuant to the court's "standard order." Judgment Entry at 6. According to the trial court's companionship schedule, Mother's visitation is

alternate weekends, one or two three-hour visitations during the week from 6:00 p.m. to 9:00 p.m., holidays, and one-half of the summer. Mother argues that, considering that Child is not yet in school and she works less hours than Father, "no plausible reason exists to not let [Mother] have more 'liberal' parenting time, as recommended by the Guardian [ad litem]." Appellant's brief at 16.

**{¶45}** As noted in assignment of error one, the trial court considered the "best interest of the children" factors from R.C. 3109.04(F). SeeJudgment Entry at 6 (noting that the trial court "considered the factors set forth in R.C. 3109.04(F)"). Additionally, the evidence demonstrates that Child has a good relationship with Father. Child also has a good relationship with his stepmother and stepbrother. And Child is well adjusted to Father's home. See Judgment Entry at 4.

**{¶46}** Mother cites *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, for the proposition that "[w]hen one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child is materially affected." We note, however, that the trial court's standard companionship schedule does not cut Mother out of Child's life. And the evidence demonstrates that, in the past, Mother had "willfully denied [Father's] right to parenting time." See R.C. 3109.04(F)(1)(i); see, also, Judgment Entry at 2 (noting that "[Mother's] own testimony and the exhibits received into evidence establish the fact that [Mother] deliberately denied [Father's 2007] summer companionship because of the late notification"). Consequently, Mother's reliance on *Flickinger* does not show that the trial court's adoption of its standard companionship schedule is not in Child's best interest.

**{¶47}** The guardian ad litem did recommend that Mother be awarded "liberal visitation." Guardian ad litem Recommendation at 7. But, even assuming that the court's standard schedule does not amount to "liberal visitation" as recommended by the guardian, the trial court is not required to follow a guardian ad litem's recommendation. See *In re Keaton*, Ross App. Nos. 04CA2785 & 04CA2788, 2004-Ohio-6210, at ¶54; *Wine v. Wine*, Delaware App. No. 04 CA F 10 068, 2005-Ohio-975, at ¶75 (stating that "a trial court has discretion to follow or reject the recommendation of a guardian ad litem").

**{¶48}** As stated above, under the abuse-of-discretion standard, "a reviewing court may not merely substitute its judgment for that of the trial court." *Melvin* at ¶ 7. There is evidence that supports the trial court's decision to award Mother visitation pursuant to the trial court's standard companionship schedule. Consequently, we cannot say that the trial court's decision constituted an abuse of discretion. Accordingly, we overrule Mother's second assignment of error.

V.

**{¶49}** In her third assignment of error, Mother contends that the trial court abused its discretion by failing to find Father in contempt of court.

**{¶50}** Contempt may be classified as either civil or criminal depending on the court's underlying rationale and the penalty imposed. *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 16. Civil contempt orders seek to coerce compliance with the court's orders while criminal orders punish the party who offends the court. See id.; *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253-54. "A finding of civil contempt does not require proof of purposeful, willing, or intentional

violation of a trial court's prior order." *Townsend v. Townsend*, Lawrence App. No. 08CA9, 2008-Ohio-6701, at ¶27, citing *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140. "[U]nlike civil contempt, criminal contempt requires proof of a purposeful, willing, or intentional violation of a trial court's order." *Delawder v. Dodson*, Lawrence App. No. 02CA27, 2003-Ohio-2092, at ¶10, citing *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 711. In addition, the burdens of proof differ for the two different types of contempt. For civil contempt, a trial court needs to find that an alleged contemnor has violated a court order by clear and convincing evidence, but the trial court needs to be convinced beyond a reasonable doubt to convict a contemnor of criminal contempt. *Delawder* at ¶10.

**{¶51}** The trial court adopted the magistrate's decision, which found "by clear and convincing evidence" that "[t]here is not sufficient evidence to support a finding that [Father] has failed to obey any order of this Court." Magistrate's Conclusion of Law 4. Because the trial court resolved Father's alleged contempt under a "clear and convincing" evidentiary standard, we construe this as a civil contempt.

**{¶52}** "This court reviews a finding of civil contempt under the abuse of discretion standard." *Lindsey v. Lindsey*, Scioto App. No. 06CA3113, 2007-Ohio-3803, at ¶18. See, also, *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 75; *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11; *McCleese v. Clemons*, Scioto App. 05CA3016, 2006-Ohio-3011, at ¶15.

**{¶53}** Mother argues that the trial court should have found Father in contempt of court for the following reasons: (1) he was "habitually late" for Child's visitation exchanges, and (2) he failed to pay his share of Mother's pre-natal and birthing

expenses. Mother testified regarding Father's alleged habitual tardiness. However, based on Mother's testimony, Father's average tardiness was about four minutes. And on the occasion when Father was over a half-hour late, Mother denied Father his visit with Child. Additionally, as mentioned above, on that occasion, Father attempted to contact Mother and her grandmother several times. Mother and her grandmother, however, claimed that neither of them answered the phone because they were each too ill to do so at the time. Considering the evidence presented, the trial court did not abuse its discretion when it determined that Father was not in contempt based on his alleged habitual tardiness during Child's visitation exchanges.

**{¶54}** Regarding the allegation of unpaid medical expenses, Article VII of the Shared Parenting Plan does require Father and Mother to share equally Mother's pre-natal and birthing expenses. Mother and Father dispute whether Mother had provided Father with the bills related to Mother's pre-natal and birthing expenses. Mother claimed that she provided Father's former attorney with the bills. Father, however, claimed that he had never received them. Father also claimed that, had he received any bills related to Mother's pre-natal and birthing expenses, he would have paid them. Given this evidentiary dispute, we cannot say that the trial court abused its discretion when it determined that there was not clear and convincing evidence to find Father in contempt of court regarding Mother's pre-natal and birthing expenses. (Mother's allegation that Father's failure to provide Child with medical insurance constituted contempt was not raised on appeal.)

**{¶55}** We conclude that the trial court did not abuse its discretion when it determined that Father was not in contempt of court. Accordingly, we overrule Mother's third assignment of error.

V.

**{¶56}** In conclusion, we dismiss Mother's fourth assignment of error for lack of a final appealable order. And we overrule Mother's first, second, and third assignments of error.

**JUDGMENT AFFIRMED, IN PART, AND APPEAL DISMISSED, IN PART.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED, IN PART, AND APPEAL BE DISMISSED, IN PART.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, P.J. and  Abele, J.:   Concur in Judgment and Opinion.

For the Court

BY:_____
    Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**