OPINION
{¶ 1} Defendant-appellant Sean M. Beismann appeals from a decision of the Montgomery County Court of Common Pleas, Domestic Relations Division, adopting a decision of the magistrate which terminated a shared parenting plan he participated in with his ex-wife, plaintiff-appellee Dyan Beismann (n/k/a Correll) regarding the care of their minor daughter, *Page 2 
B.B.[1] Sean also appeals the court's decision naming Dyan the primary custodial and residential parent of B.B.
 {¶ 2} The judgment and entry adopting the decision of the magistrate was issued by the trial court on July 25, 2007. On August 7, 2007, Sean filed a timely notice of appeal with this Court.
 I {¶ 3} Sean and Dyan were married on September 19, 1998, in Vandalia, Ohio. The parties had one child, B.B., who was born February 19, 1998. After a brief marriage, Dyan filed a complaint for divorce on June 29, 2002. A final decree of divorce was rendered by the trial court on May 13, 2004, which incorporated a shared parenting plan agreed to by both parties. The terms of the plan provided that both Sean and Dyan were considered to be the residential parents and legal custodians of B.B., with Sean to be considered the primary residential parent. Moreover, the plan required that both parties confer on matters regarding B.B.'s health and education. If the parties were unable to reach an agreement concerning B.B.'s welfare, however, the shared parenting plan vested Sean with final authority to make decisions on behalf of B.B. After the divorce, both parties remarried: Sean married Tara Deskins, and Dyan married Eric Correll. Dyan and Eric have a son together, C.C. Sean and Tara reside in Centerville, Ohio. Dyan and Eric live in Troy, Ohio, approximately forty-five (45) minutes away.
 {¶ 4} On December 16, 2004, Dyan filed a motion to terminate the shared parenting plan in which she also requested that she be named the sole residential parent of B.B. Shortly *Page 3 
thereafter, Sean filed a motion to terminate the shared parenting order, also requesting sole custody of B.B. A hearing on said motions was held in front of the magistrate over the following eight days: April 14, 2005, July 18, 2005, August 22, 2005, August 24, 2005, October 27, 2005, November 15, 2005, November 17, 2005, and January 4, 2006.
 {¶ 5} On June 29, 2006, the magistrate issued her decision and permanent order in which she granted both parties' motions to terminate the shared parenting order because neither Sean nor Dyan were able to communicate effectively regarding the care and support of B.B. The magistrate found that Sean was abusing his power to make final decisions regarding the welfare of B.B. by essentially ignoring any input from Dyan. Thus, the magistrate found that it was in the best interests of B.B. that the shared parenting plan be terminated, and Dyan was named the sole residential parent of B.B. Sean was given standard visitation with B.B. and ordered to pay approximately $660.00 per month in child support. Sean filed objections to the magistrate's decision with the trial court on July 6, 2006, and August 21, 2006.
 {¶ 6} As stated previously, the trial court agreed with the conclusions of the magistrate, and sustained both parties' motion to terminate the shared parenting plan after finding that it was in the best interests of B.B. pursuant to R.C. § 3109.04(E)(2)(c). The court named Dyan the sole residential parent of B.B. with liberal visitation for Sean. Lastly, the trial court ordered Sean to pay child support in the amount of $660.00 per month.
 {¶ 7} It is from this judgment that Sean now appeals.
 II {¶ 8} Initially, we note that Sean has filed a supplemental brief, in addition to his original merit brief, in which he points out that the trial court stated that it "terminated" the *Page 4 
shared parenting plan pursuant to R.C. § 3109.04(E)(2)(c). This section of the statute only requires that the court find that it is in the best interests of the minor child to terminate the shared parenting plan. "Significantly, nothing in R.C. 3109.04(E)(2)(c) requires the trial court to find a change in circumstances in order to terminate a shared parenting agreement." Goetze v. Goetze (March 27, 1998), Montgomery App. No. 16491.
 {¶ 9} Sean contends that the trial court did not terminate the shared parenting plan, but rather only modified the plan by changing the residential parent pursuant to either R.C. §§ 3109.04(E)(2)(a) or3109.04(E)(2)(b). If this were the case, as Sean asserts, then in order to modify the shared parenting plan, the trial court was required to find that a change had occurred in the circumstances of B.B., or either of the parents subject to the shared parenting decree, and the modification is necessary to serve the best interests of the child. R.C. § 3109.04(E)(1)(a). Sean asserts that the court did not analyze whether a change of circumstances occurred that would require the modification of the shared parenting order and change of the residential parent. However, Sean also argues that the record clearly indicates that no change of circumstances did, in fact, occur that would necessitate a reallocation of parental rights. Thus, he contends that he is entitled to remain B.B.'s residential parent pursuant to either R.C. §§3109.04(E)(2)(a) or 3109.04(E)(2)(b).
 {¶ 10} In support of his argument, Sean cites the recent Ohio Supreme Court case Fisher v. Hasenjager (2007), 116 Ohio St.3d 53,876 N.E.2d 546, 2007-Ohio-5589. In that case, the Supreme Court upheld a decision of the Third District Court of Appeals in which the court held that a mere change in the designation of the residential parent and legal custodian did not constitute a termination of the shared parenting plan, but rather only a modification of the plan. *Page 5 
Thus, pursuant to R.C. § 3109.04(E)(1)(a), the trial court must make a determination as to whether a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to the shared parenting decree. The court must then determine whether the modification is necessary to serve the best interests of the child.
 {¶ 11} Sean argues that the facts involved in Fisher are similar to those in the instant case. He contends that by merely changing the designation of the residential parent and legal custodian to Dyan, the trial court only modified the shared parenting order, not terminated it. Therefore, the court was required to find that a change in circumstances had occurred which warranted the reallocation of parental rights. Specifically, he asserts that the court erred in removing him as residential parent of B.B. because the record reflects that no change in circumstances had occurred. In the alternative, Sean argues that this matter be remanded to the trial court for a hearing to determine whether a change in circumstance has occurred pursuant to R.C. §3109.04(E)(1)(a).
 {¶ 12} It is undisputed that both Dyan and Sean filed motions with the trial court requesting that the shared parenting order beterminated, not modified. Moreover, the original shared parenting order contained language that made both parties residential parents and legal custodians of B.B., while Sean was given primary custody for school attendance purposes. Under the shared parenting plan, Dyan was also required to pay child support in the amount of approximately $68.00 per month to Sean.
 {¶ 13} Pursuant to the termination order that the trial court issued on July 25, 2007, Dyan was made the sole residential parent and legal custodian of B.B., while Sean received very liberal visitation with B.B. Therefore, any decisions regarding the care, welfare, and education *Page 6 
of B.B. are primarily up to Dyan. Further, the trial court ordered Sean to pay approximately $660.00 per month in child support to Dyan, a significant jump from 68.00 per month. Simply put, the plan was terminated. In light of the foregoing material changes in B.B.'s custodial status, we are unpersuaded by Sean's argument that the trial court merely modified the shared parenting plan. Thus, the trial court acted properly when it exercised its discretion and terminated the shared parenting plan based on the best interests of B.B. pursuant to R.C. § 3109.04(E)(2)(c).
 III {¶ 14} Sean advances four assignments of error in his merit brief. Since all of the following assignments are interrelated, they will be discussed together:
 {¶ 15} "THE TRIAL COURT ERRED IN TERMINATING THE SHARED PARENTING PLAN BECAUSE THERE WAS NO EVIDENCE TO SUPPORT THAT THE BEST INTEREST OF THE MINOR CHILD WAS NOT BEING MET UNDER THE PLAN, NOR WAS THERE EVIDENCE THAT IT WAS NOT BEING MET BY MR. BEISMANN, THE MAJORITY PARENT IN THIS MATTER.
 {¶ 16} "THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO MR. BEISMANN, AND AGAINST THE WEIGHT OF THE EVIDENCE, IN HOLDING THAT MODIFICATION OF CUSTODY WAS NECESSARY TO SERVE B.B.'S BEST INTEREST UNDER R.C. 3109.04.
 {¶ 17} "THE MAGISTRATE DOES NOT MAKE ANY FINDING OF FAILURE ON THE PART OF MR. BEISMANN UNDER THE SHARED PARENTING PLAN, BUT RATHER MR. BEISMANN HAS MET ALL OF B.B.'S NEEDS AND CREATED A *Page 7 
THRIVING ENVIRONMENT FOR HER.
 {¶ 18} "THE MAGISTRATE ERRED IN FINDING MR. BEISMANN TO BE THE `MORE CONTROLLING INDIVIDUAL' TO HIS DETRIMENT BECAUSE THE SHARED PARENTING PLAN SPECIFICALLY DICTATED HE HAD THE ULTIMATE DECISION REGARDING B.B.'S SCHOOL, HEALTH AND EDUCATION."
 {¶ 19} In the instant appeal, Sean essentially contends that the magistrate and the trial court erred when they concluded that it was in the best interest of B.B. for the shared parenting plan to be terminated and for her to be placed in the residential care and custody of Dyan.
 {¶ 20} The discretion which a trial court enjoys in custody matters should be afforded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. Miller v.Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849. Thus, a reviewing court may not reverse a custody determination unless the trial court has abused its discretion. Pater v. Pater (1992),63 Ohio St.3d 393, 588 N.E.2d 794. An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161,553 N.E.2d 597, 601.
 {¶ 21} As previously noted, both Sean and Dyan sought to terminate the shared parenting decree and to be designated as the child's custodial parent. R.C. § 3109.04(E)(2)(c) *Page 8 
states in pertinent part:
 {¶ 22} "The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interests of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon it own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children."
 {¶ 23} Additionally, R.C. § 3109.04(E)(2)(d) provides:
 {¶ 24} "Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made."
 {¶ 25} In determining the rights of the parties with respect to the custody of B.B., the magistrate and the trial court considered the factors set out in R.C. § 3109.04 to determine if a shared parenting plan was in E.G.'s best interest. The court examined factors under both sections (F)(1) and (F)(2) and found that shared parenting was not in the best interest of the child.
 {¶ 26} Under (F)(1), the court must consider the following factors:
 {¶ 27} "(a) The wishes of the child's parents regarding the child's care; *Page 9 
 {¶ 28} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 29} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 30} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 31} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 32} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 33} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 34} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject *Page 10 
of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 35} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 36} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 37} With respect to the factors in R.C. § 3109.04(F)(1), the trial court found that both Dyan and Sean provided a loving and nurturing atmosphere in which B.B. could thrive. The record demonstrates that both parents made every effort to be positively involved in B.B.'s life. There is no indication that B.B. was mistreated or neglected in either household. According to the testimony of a child psychologist hired by Sean, B.B. is a happy and well-adjusted young girl.
 {¶ 38} However, as Dyan points out in her merit brief, the court also relied on the two following factors in R.C. § 3109.04(F)(2) in discerning what was in the best interests of B.B.:
 {¶ 39} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 40} "(b) The ability of each parent to encourage the sharing of love, affection, *Page 11 
and contact between the child and the other parent."
 {¶ 41} In terminating the shared parenting plan, the trial court focused primarily on the complete inability of Sean and Dyan to cooperate regarding anything pertaining to B.B.'s education and care as the basis for terminating shared parenting. This finding was based on Sean's established dictatorial attitude regarding a clause in the shared parenting plan which vested with him final authority with respect to any decisions made on behalf of B.B. Specifically, Dyan testified that Sean was attempting, through his interpretation of the "final decision" language, to completely exclude Dyan from any cooperative decision-making role in B.B.'s life, thereby limiting her contact with the child.
 {¶ 42} One example of Sean's calculated exclusion of Dyan from contact with B.B. was his unreasonable response to Dyan's request that she be able to have custody of B.B. when there is an in-service day at the child's school. Dyan maintains that this was an innocuous request given that Sean works during the day, and it would not interfere with his custody of B.B. Instead of acquiescing to Dyan's request, however, Sean sent B.B. to a relative's house for supervision and made Dyan wait until 2:15 p.m., the time school normally lets out, to pick B.B. up so that they could spend some time together. This behavior demonstrates an unreasonable and arbitrary attitude on Sean's part with respect to helping to foster a caring and loving relationship between B.B. and Dyan.
 {¶ 43} Another example of Sean's calculated exclusion occurred when Dyan became aware that B.B. was meeting with a psychologist at Sean's behest. When Dyan asked Sean to identify the psychologist, Sean's only response was allegedly, *Page 12 
"she is someone we are seeing." Dyan testified that Sean has also withheld information regarding B.B.'s prescription for a nebulizer to treat her asthma, as well as information that B.B. failed her hearing test at school. Dyan testified further that Sean refused to tell her the times of certain extracurricular activities in which B.B. participated. When Sean did finally provide a list of B.B.'s activities, he did not list the times that said activities were held, thereby forcing Dyan to contact the facilities and get the times herself. In one instance, Dyan alleged that Sean refused to give her authorization so that she could obtain B.B.'s medical records in order to stay abreast of B.B. current health. It should also be noted that Dyan believes Sean's new wife, Tara, is openly hostile to her based on an event which allegedly occurred at B.B.'s gymnastics class. Dyan alleges that Tara intentionally "slammed" into her as she passed her in the gym. Sean and Tara do not dispute that contact occurred between the two women, but characterize the incident as unintentional and a misunderstanding. We agree with Dyan that such behavior is inexcusable, particularly if B.B. is a witness to it. One final example of Sean's attempts to alienate Dyan in her role as B.B.'s mother occurred when Sean was required to fill out an emergency medical authorization form for B.B.'s school. On the list of emergency contacts, Sean listed himself as the first person to contact, his wife, Tara, as the second person, his mother as the third person, his sister-in-law as the fourth, and, finally, Dyan as the fifth and last person to contact. Clearly, the record is replete with examples of his dictatorial and controlling stance in regards to B.B.'s care and education.
 {¶ 44} Sean argues that the trial court erred when it failed to point out any specific instance when he did not abide by the mandates set forth in the shared *Page 13 
parenting plan. As Dyan argues in her brief, however, the issue before us is not whether Sean followed the letter of the plan. The issue is whether the manner in which Sean chose to implement the plan worked in the best interests of B.B. We agree with the holding of the trial court and find that Sean's dictatorial and inflexible interpretation actually undermined the goal of the shared parenting plan insofar as he made decisions that excluded and alienated Dyan. "We remain convinced that trial court's discretion in the matter must be guided at least in part by the children's best interest. As a practical matter, of course, when a parent wants shared parenting terminated and refuses to cooperate, it is difficult to imagine continuation of shared parenting being in the children's best interest." Goetze, supra.
 {¶ 45} "Shared parenting" means that the parents share, in the manner set forth in the plan for shared parenting that is approved by the court, all or some of the aspects of physical and legal care of their children. Ohio Jurisprudence, Family Law § 1077. While Sean may have been provided with the ultimate decision-making authority regarding the health and education of B.B., he did not have the right to wield that authority in such a manner as to disrupt Dyan's maternal relationship with B.B. The record establishes that any attempt on Dyan's part to exercise her co-parental rights with respect to the care and well being of B.B. was met by Sean with hostility and the accusation that she was usurping his authority. Put mildly, Sean abused the authority vested in him by the shared parenting plan. His behavior exhibits a complete inability to co-parent. It was clearly not in the best interest of B.B. for Sean to implement the shared parenting plan in a manner which excluded and alienated Dyan from her daughter. Thus, the trial court did not abuse its discretion in concluding that it *Page 14 
was in the best interest of B.B. to terminate the shared parenting plan and make Dyan the sole residential parent and legal custodian pursuant to R.C. § 3109.04(E)(2)(c).
 {¶ 46} All of Sean's assignments of error are overruled.
 IV {¶ 47} All of Sean's assignments of error having been overruled, the judgment of the trial court is affirmed.
BROGAN, J. and VALEN, J., concur.
[1] In order to simplify the reading of this opinion, all parties will be referred to by their first names. *Page 1