[Cite as *Toler v. Toler*, 2011-Ohio-3510.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY**

PATRICK V. TOLER              :

                               :        Appellate Case No. 10-CA-69

     Plaintiff-Appellee              :

                               :        Trial Court Case No. 05-DS-1200

v.                                    :

                               :

HOLLY N. TOLER (nka RAKES)     :          (Civil Appeal from Common Pleas

                               :          Court, Domestic Relations)

     Defendant-Appellant           :

                               :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 15ᵗʰ day of July, 2011.

. . . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. #0003191, 2160 Kettering Tower, Dayton, Ohio 45423
     Attorney for Plaintiff-Appellee

DAVID M. McNAMEE, Atty. Reg. #0068582, 42 Woodcroft Trial, Suite D, Dayton, Ohio
45430
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Holly Toler, now known as Holly Rakes, appeals from an order of the Clark County Court of Common Pleas, Domestic Relations Division, denying her motion to terminate a shared parenting plan she had participated in with her ex-husband,

plaintiff-appellant Patrick Toler. Rakes contends that the trial court erred by requiring her to demonstrate a substantial change of circumstances in addition to demonstrating that termination of the plan is in the best interest of the children. She further contends that the trial court's decision is not supported by the evidence.

{¶ 2} We conclude that even though the trial court erred by considering the issue of whether there had been a substantial change in circumstances, that error was harmless in view of the fact that the trial court also found that termination of the shared parenting plan would not be in the children's best interest, which finding is supported by competent, credible evidence. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} The parties were married on March 16, 1996. They have four minor children as a result of their union. The parties were granted a dissolution of their marriage by order of March 7, 2006. Of relevance hereto, the dissolution included a shared parenting agreement designating Rakes as the primary residential parent while permitting "open and liberal parenting time between the parties." Toler was required to pay child support and to maintain health insurance for the benefit of the children.

{¶ 4} In 2008, Rakes moved to terminate the shared parenting plan. The guardian ad litem recommended that the shared parenting be terminated. After a hearing on the motion, held in May 2010, the trial court denied the motion to terminate the shared parenting plan, finding that Rakes had failed to demonstrate a change of circumstances, and further finding that terminating the shared parenting plan would not be in the best interest of the children.

{¶ 5} Rakes appeals from the order denying her motion to terminate the shared parenting plan.

II

{¶ 6} The First and Second Assignments of Error state as follows:

{¶ 7} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND THAT THE SECOND DISTRICT COURT OF APPEALS MISSTATED AND THEN MISAPPLIED THE DECISION OF THE SUPREME COURT OF OHIO IN FISHER V. HASENJAGER (2007), 116 OHIO ST.3D 53.

{¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO TERMINATE THE EXISTING SHARED PARENTING AGREEMENT AND NAME APPELLANT THE SOLE RESIDENTIAL PARENT AS RECOMMENDED BY THE [GUARDIAN AD LITEM] BECAUSE IT USED THE INCORRECT STANDARD OF REVIEW AND FOUND THAT THE OHIO SUPREME COURT'S HOLDING MEANT THAT THE TRIAL COURT HAD TO FIRST FIND A CHANGE OF CIRCUMSTANCES BEFORE IMPLEMENTING THE 'BEST INTEREST TEST.' "

{¶ 9} Rakes contends that the trial court erred when it decided, as a preliminary matter, that she was required to demonstrate a substantial change in the parties' circumstances, in addition to demonstrating that termination of the shared parenting plan would be in the best interest of the children.

{¶ 10} Termination of a shared parenting plan is governed by R.C. 3109.04(E)(2)(c), which provides as follows: "The court may terminate a prior final shared parenting decree

that includes a shared parenting plan approved under division (D)(1)(a)(I) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children."

{¶ 11} This court has held that "[t]his section of the statute only requires that the court find that it is in the best interests of the minor child to terminate the shared parenting plan." *Beismann v. Beismann*, Montgomery App. No. 22323, 2008-Ohio-984, ¶ 8. "Significantly, nothing in R.C. 3109.04(E)(2)(c) requires   the trial court to find a change in circumstances in order to terminate a shared parenting agreement."  Id., citing *Goetze v. Goetze* (March 27, 1998), Montgomery App. No. 16491.

{¶ 12} The trial court in this case indicated in a preliminary decision and entry that it disagreed with our holding in *Beismann*.  The trial court interpreted the decision of the Supreme Court of Ohio in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, as requiring both a finding of changed circumstances and a finding of best interests before termination of a shared parenting order.  Our decision in *Beismann* was not only subsequent to *Fisher v. Hasenjager*, it cited *Hasenjager*.

{¶ 13} Although it is not essential to our disposition of this appeal, we must take this occasion to remind the trial court that while it is perfectly free to disagree with prior holdings of this court, it is nevertheless required to follow them.  " * * * [A] court's decision made after argument on a question of law necessary to the determination of a case is binding

precedent in lower courts where the same issue is in controversy." *State v. McKinney* (1992), 80 Ohio App.3d 470, 475. "A trial court has the obligation of following the decisions of the reviewing courts on questions of law pertinent to a case in the process of trial." *Driscoll v. Block* (1965), 3 Ohio App.2d 351, 366.

{¶ 14} Of course, if there has been an intervening change in the law, as a result of a constitutional amendment, the enactment of a statute, a *subsequent* decision of the Supreme Court of Ohio, the United States Supreme Court, or this court, that might render a prior decision of this court no longer binding. But *Fisher v. Hasenjager*, upon which the trial court relied in this case, preceded our decision in *Beismann v. Beismann*, which referred to *Fisher v. Hasenjager*. Thus, in deciding that a finding of a substantial change in circumstances is not required to terminate a shared parenting agreement, we necessarily concluded that our decision was not inconsistent with the holding in *Fisher v. Hasenjager*. The trial court was free to disagree with us in that regard, but it was not free to fail to follow our holding.

{¶ 15} Subsequently, in its decision denying the motion to terminate the shared parenting order, the trial court found that Rakes had failed to demonstrate a change in circumstances sufficient to warrant a termination of the shared parenting plan. The trial court then went on to also determine that termination of the shared parenting plan was not in the best interest of the children.

{¶ 16} Thus, although the trial court's consideration of whether there was a change in circumstances was erroneous under our holding in *Beismann*,[1] we conclude that this error was

---

[1] Because the best-interest test is an independent ground in this case to deny the motion to terminate shared parenting, we find it unnecessary to consider, in this case, whether *Beismann v. Beismann*, 2008-Ohio-984, should be overruled.

harmless, since the trial court also found, after considering the best interest factors set forth in R.C. 3019.04(F), that a termination was not in the best interest of the children, which was a sufficient, independent basis for denying the motion to terminate.

{¶ 17} We now turn to the question of whether the evidence in the record supports the trial court's findings regarding the best interest of the children. A trial court enjoys broad discretion in custody matters. *Beismann v. Beismann*, Montgomery App. No. 22323, 2008-Ohio-984, ¶ 20. Therefore, a reviewing court will not disturb a trial court's findings and decisions child custody cases absent an abuse of discretion. Id. The term "abuse of discretion" implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 18} R.C. 3109.04(F), which sets forth the factors for analyzing a question of the best interests of a child, provides in relevant part as follows:

{¶ 19} "(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

{¶ 20} "(a) The wishes of the child's parents regarding the child's care;

{¶ 21} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶ 22} "(c) The child's interaction and interrelationship with the child's parents,

siblings, and any other person who may significantly affect the child's best interest;

{¶ 23} "(d) The child's adjustment to the child's home, school, and community;

{¶ 24} "(e) The mental and physical health of all persons involved in the situation;

{¶ 25} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶ 26} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶ 27} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner

resulting in a child being an abused child or a neglected child;

{¶ 28} "(I) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶ 29} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 30} "(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

{¶ 31} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

{¶ 32} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

{¶ 33} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

{¶ 34} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

{¶ 35} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

{¶ 36} At the hearing, Rakes testified that she and Toler had difficulty communicating regarding issues such as daycare, holiday visitation, health insurance coverage, medical

treatment, homework and uncovered medical expenses. Toler acknowledged some of the problems, but indicated that the parties were doing a better job of communicating in the recent past. Indeed, the record shows that the parties had reached an agreement on parenting time and modification of health insurance coverage.

{¶ 37} After reviewing the evidence, the trial court found that "the parties hereto do have the ability to cooperate and make decisions jointly with respect to their children." The trial court further found that Rakes's claims regarding daycare, uncovered medical expenses, medical treatments or homework were not "nearly as significant of a controversy between the parties as she suggests." The trial court found that both parties have a "very close and loving relationship" with the children and that both have done an "overall good job." The trial court noted that the children "are very well adjusted to their home, school and community, which in this Court's opinion somewhat substantiates the effectiveness of the existing shared parenting plan." While the Guardian Ad Litem recommended terminating the shared parenting, the trial court noted that the GAL report had been filed eight months prior to the hearing and that the GAL did not have the benefit of hearing the evidence presented at the hearing.

{¶ 38} The trial court found no evidence to suggest any mental or physical health problems that would impact the shared parenting plan. The trial court stated that both parties are likely to honor and facilitate parenting rights or visitation and that there was no evidence either party had wilfully denied the other parent parenting rights. The court noted that Toler had been regular and timely in making his child support payments, and had indeed overpaid. Neither parent had been convicted of any criminal offense involving a child. The trial court found that neither parent appeared to intend to move out of state.

{¶ 39} It appears from the transcript that the parties did have a period of time where they experienced some small difficulties getting along, but that the trial court is correct in its assessment that those issues were minor. We conclude that the trial court's findings are supported by competent, credible evidence and that it did not abuse its discretion in finding that the best interest of the children was being met by the shared parenting plan.

{¶ 40} The First and Second Assignments of Error are overruled.

III

{¶ 41} Bot of Rakes's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ, concur.


Copies mailed to:

Keith R. Kearney
David M. McNamee
Hon. Thomas J. Capper