[Cite as *In re A.P.D.*, 2014-Ohio-1632.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100504

# IN RE:   A.P.D.
## Minor Child

[Appeal by Mother]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR 08738998

**BEFORE:**   McCormack, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**    April 17, 2014

**ATTORNEY FOR APPELLANT**

Susan M. Seacrist
38109 Euclid Ave.
Willoughby, OH   44094


**ATTORNEY FOR APPELLEE**

Paulette J. Lilly
159 Glenview Drive
Avon Lake, OH   44012

TIM McCORMACK, J.:

{¶1} Appellant, D.D. ("Mother"), appeals the trial court's order terminating the shared parenting plan and awarding legal custody of minor child, A.P.D., to C.N. ("Father"). Mother also appeals the visitation schedule ordered by the trial court. For the reasons that follow, we affirm.

## Procedural History

{¶2} According to the parties, Mother and Father had been operating under the terms of a shared parenting plan that was initially approved by the trial court on February 24, 2010, and subsequently modified on May 25, 2012.[1] On January 10, 2013, Father filed a motion to terminate the shared parenting plan and to award Father sole custody. Included within the motion to terminate was a motion for child support and a motion for drug and alcohol assessment.

{¶3} In support of his motion to terminate the shared parenting plan, Father stated that Mother refused to follow the shared parenting plan to which they previously agreed. Specifically, Father claimed that Mother refused to communicate with Father through Our Family Wizard, as required by a prior court order, and communication in general has been severely hampered by Mother. Father also claimed that Mother failed to schedule A.P.D.'s medical treatment as required by the plan, thus causing a disruption in A.P.D.'s medical treatment. Finally, Father claimed in his motion that Mother has a

---

[1]The record does not include the original shared parenting plan or any modification of the plan.

history of alcohol abuse that has directly affected Mother's ability to properly care for their child.

{¶4} In response to Father's motion, on March 29, 2013, Mother filed a motion to modify parental rights and responsibilities and motion to appoint a parenting coordinator. Mother requested in her motion to be named residential parent for school purposes. She also requested the court to appoint a parenting coordinator to assist the parties in making decisions, admitting the parties are unable to effectively communicate without assistance.

{¶5} Father's motion to terminate the shared parenting plan was heard on May 20, 2013. During trial, Father and Mother testified. Additionally, Angela Curtiss, an intake social worker with the Cuyahoga County Division of Children and Family Services, testified on behalf of Father. James Schulz, guardian ad litem ("GAL"), was called to testify as a court's witness.

{¶6} Following the trial, the parties submitted closing arguments to the court. On July 5, 2013, the trial court issued an order granting Father's motion to terminate the shared parenting plan and naming Father legal custodian and residential parent of A.P.D., finding this determination to be in the best interest of the child. In this same order, the court ordered the parties to prepare a visitation schedule for Mother and the GAL to prepare a suggested visitation schedule to be submitted to the court, in the event the parties are not able to agree.

**{¶7}** On August 26, 2013, the court held a hearing on child support and thereafter issued an order addressing child support issues. While Mother filed objections to the court's order, the issue of child support has not been appealed to this court.

**{¶8}** On September 9, 2013, the trial court issued an order of visitation for Mother as the non-residential parent.

**{¶9}** Following the September order of the trial court, Mother appealed the trial court's orders of July 5, 2013, terminating the shared parenting plan and September 9, 2013, outlining a visitation schedule, setting forth four assignments of error for our review.

## Assignments of Error[2]

I. The trial court abused its discretion in terminating the Shared Parenting Plan and in awarding legal custody to Father.

II. The trial court erred in admitting the testimony of social worker Angela M. Curtiss as to her opinions which fell outside the scope of her duties under Ohio law and which were not properly founded upon Evid.R. 702.

III. The trial court erred when it overruled the objection of Mother's counsel to the testimony of the Guardian ad Litem, where the Guardian ad Litem failed to adhere to the requirement of [Sup.R. 48].

IV. The trial court abused its discretion when it issued a parenting and visitation order without a hearing to present evidence from the parties as to the best interests of the child.

---

[2]For ease of discussion, we will address Mother's assignments of error out of order.

## Standard of Review

{¶10} A trial court's decision concerning the allocation of parental rights and responsibilities rests within the sound discretion of the trial court. *In re A.M.S.*, 8th Dist. Cuyahoga No. 98384, 2012-Ohio-5078, ¶ 17, citing *In re D.J.R.*, 8th Dist. Cuyahoga No. 96792, 2012-Ohio-698. Specifically, the trial court's determination of what is in the best interest of the child will not be disturbed absent an abuse of discretion. *Drees v. Drees*, 3d Dist. Mercer No. 10-13-04, 2013-Ohio-5197, ¶ 20. An abuse of discretion suggests that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. *Id.*

## Guardian ad Litem's Report

{¶11} In her third assignment of error, Mother contends that the trial court erred when, over counsel's objection, it permitted the testimony of the GAL where the GAL failed to follow the guidelines set forth in Sup.R. 48 and Loc.Juv.R. 20 of the Court of Common Pleas, Juvenile Division. Specifically, Mother claims that the GAL did not submit a written report or interview the child, in direct contravention of the rules.

{¶12} Sup.R. 48 governs all domestic relations and juvenile cases in the courts of common pleas "where a court appoints a guardian ad litem to protect and act in the best interest of a child." Sup.R. 48(A). Sup.R. 48(D)(13)(a) states that in order to provide the court with an informed recommendation with respect to the child's best interest, a

GAL must meet with and interview the child "unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case." Further, Sup.R. 48(F)(2) provides that a GAL shall prepare a written final report in domestic relations proceedings involving the allocation of parental rights and responsibilities.

{¶13} Ohio appellate courts, including this court, however, have consistently held that the rules of superintendence are merely guidelines and do not have the force and effect of statutory law. *O'Malley v. O'Malley*, 8th Dist. Cuyahoga No. 98708, 2013-Ohio-5238, ¶ 56, citing *In re D.C.J.*, 8th Dist. Cuyahoga Nos. 97681 and 97776, 2012-Ohio-4154, ¶ 48. In finding that violations of the rules of superintendence are not grounds for reversal, the Eleventh District Court of Appeals has stated as follows:

> The "Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts." *State v. Singer* (1977), 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216. "They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 360 N.E.2d 735. *Accord State v. Navedo*, 11th Dist. No. 2007-L-094, 2008-Ohio-2324, at P18, citing *State v. Kowalski*, 11th Dist. No. 93-P-0057, 1995 Ohio App. LEXIS 1089, at *16-*17.

*Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475, ¶ 31; *see also In re K.G.*, 9th Dist. Wayne No. 10CA16, 2010-Ohio-4399, ¶ 12.

**{¶14}** Additionally, Loc.Juv.R. 20 requires that a GAL prepare a written report in permanent custody cases. *In re T.F.*, 8th Dist. Cuyahoga Nos. 91438 and 91472, 2008-Ohio-6652, ¶ 43; Loc.Juv.R. 20(A). The enforcement of such local rules is a matter within the sound discretion of the court, because courts have wide latitude in following their own local rules. *See In re D.C.J.*, at ¶ 50; *In re T.W.*, 8th Dist. Cuyahoga Nos. 88360 and 88424, 2007-Ohio-1441, ¶ 39.

**{¶15}** This case, however, is not a permanent custody case involving the termination of parenting rights and thus governed by R.C. 2151.414(C), which does require the filing of a GAL's written report prior to the permanent custody hearing. Rather, it is the allocation of parental rights and responsibilities, where the non-custodial parent still has the right of visitation. It is therefore governed by R.C. 3109.04, which does not require the GAL to file a written report. *In re Reid*, 3d Dist. Paulding No. 11-98-3, 1998 Ohio App. LEXIS 3819, * 6, 7 (July 10, 1998); *Bates-Brown v. Brown*, 11th Dist. Trumbull No. 2006-T-0089, 2007-Ohio-5203, ¶ 28 (distinguishing between permanent custody cases and the allocation of parental rights with respect to the proper statutory application). In contrast to a permanent custody matter under R.C. 2151.414(C), the GAL's recommendation in a court's determination of whether a shared parenting plan is in a child's best interest is merely "a factor to be considered." *In re Reid*, citing R.C. 3109.04(F)(2)(e).

{¶16} Here, the GAL did not file a written report prior to the hearing on Father's motion to terminate the shared parenting plan. He did, however, personally testify as a court's witness, and he provided an oral summary of his recommendation. Both the court and the parties had the opportunity to question the GAL about his recommendation with respect to the best interest of A.P.D., and Mother did, in fact, cross-examine the GAL regarding his investigation and the basis of his recommendation. In light of the GAL having testified, the trial court properly considered the GAL's recommendation in accordance with R.C. 3109.04(F)(2)(e). We therefore find no error in admitting the GAL's testimony without the submission of a written report.

{¶17} Mother also contends that the trial court erred in allowing the GAL's testimony in light of the fact that he did not interview the child. The guidelines set forth in Sup.R. 48(D)(13)(a) provide that the GAL must meet with the child "unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case."

{¶18} Here, the GAL testified that since the filing of the agreed entry in May 2012, he had spoken with the parties and the social worker and reviewed records of communications between the parties and communications between the parties and mental health professionals. He did not however meet with A.P.D. In explaining why he did not meet with the minor child, the GAL testified that "this is a very unusual case * * * a very extreme case" and stated as follows:

The reason I did not meet with the child is because this child has been subjected * * * to psychologists, psychiatrists, social workers, guardians, and other people, and this child has had enough of people coming to talk to him.

He is not going to tell me what he wants. He is not going to tell me a whole lot at age five. He has been through hell, and it is not appropriate, in my humble opinion, for me to sit down and have talks with him.

{¶19} We find that the trial court did not err in allowing the GAL's testimony notwithstanding that the GAL had not personally met with A.P.D. in the year since the last agreed entry. As we previously stated, it was within the discretion of the trial court to disregard the court's guidelines as outlined in Sup.R. 48, because the rules of superintendence do not have the force of statutory law. Regardless, the GAL testified that meeting with the child once again was "inappropriate" because of his age and in light of the fact that the child had previously been subjected to numerous professionals and "ha[d] been through hell." We find that the GAL properly established circumstances in which it would be inadvisable to interview the minor child in this case.

{¶20} In light of the foregoing, Mother's third assignment of error is overruled.

## Social Worker's Testimony

{¶21} In her second assignment of error, Mother claims that the trial court erred in admitting the testimony of Angela Curtiss, the social worker initially involved in this matter. Mother argues that Curtiss's testimony concerning Mother's alleged alcohol abuse and mental health concerns was her expert opinion and Curtiss was not qualified as an expert in this regard.

{¶22} A trial court has broad discretion in admitting or excluding evidence, and a trial court's ruling on the admissibility of evidence will be upheld absent an abuse of discretion and a showing of material prejudice. *In re H.A.I.*, 8th Dist. Cuyahoga No. 97771, 2012-Ohio-3816, ¶ 52, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). An error in an evidentiary ruling does not warrant reversal of the trial court's judgment "unless the trial court's actions were inconsistent with substantial justice and affected the substantial rights of the parties." *State v. Azbell*, 5th Dist. Fairfield No. 04CA11, 2005-Ohio-1704, ¶ 151.

{¶23} Evid.R. 602 provides as follows:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of [Evid.R. 703], relating to opinion testimony by expert witnesses.

{¶24} Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶25} Here, Curtiss did not testify as an expert, nor was her testimony "opinion testimony." Rather, her testimony consisted of her investigation from which she relied on her own personal observations of the interactions between both parents and A.P.D.,

conversations with Mother and Father, and a review of records made during the course of the case.

{¶26} Curtiss initially received the case, through a referral to the Cuyahoga County Division of Children and Family Services, as a result of allegations of physical and emotional maltreatment. While she determined that the initial allegations were "unsubstantiated," Curtiss developed concerns in the course of her investigation with respect to Mother's possible alcohol abuse and potential mental health issues.

{¶27} Curtiss testified that she became concerned that Mother "had some possible alcohol abuse issues that I felt needed to be assessed." She based this concern on conversations she had with Mother during which Mother disclosed that there was an alcohol-related criminal conviction just prior to Curtiss's investigation in addition to other alcohol-related offenses in previous years. Curtiss stated that she also learned through her investigation that "there had been several incidents of alcohol-related driving offenses." Curtiss testified that Mother advised her that "[t]he last one * * * was the physical control probably a month or two before my referral came in."[3] Because of these concerns, Curtiss recommended that Mother complete a drug and alcohol assessment.

---

[3]There is some dispute as to whether the charge against Mother was for "physical control" or "reckless operation" and whether the offense involved alcohol. Regardless of the dispute, for purposes of this assignment of error, we consider the fact that Curtiss testified that it was Mother's disclosure to Curtiss in the course of her investigation that the offense with which she was charged was alcohol-related and it is this personal disclosure to Curtiss that was responsible, in part, for Curtiss's concerns with respect to alcohol abuse.

{¶28} Additionally, Curtiss testified that "there were some indicators or some red flags of possibl[e] mental health issues, and I did request [Mother] to sign a release of information for me to be able to touch base with her providers."  She stated that Mother had disclosed to her that she had adult ADHD and "I noticed that her hands were severely trembling."  Mother further disclosed to Curtiss that the trembling was due to her ADHD medication and "some signs of obsessive behavior."  Curtiss stated that in the course of her investigation, she noted some "excessive contact" with the Cleveland Clinic to the extent that a Cleveland Clinic ombudsman's intervention was necessary in order to manage A.P.D.'s care in that facility.  Curtiss stated that Mother did not satisfactorily address Curtiss's mental health concerns, nor did she authorize Curtiss to contact mental health service providers in order for her to complete that portion of her investigation. Because of these mental health concerns, Curtiss made a decision to transfer the case for ongoing services.

{¶29} In light of the above, we find the record demonstrates that Curtiss's testimony was not that of an expert witness, but rather, it was admissible testimony of the social worker's personal observations made in the course of her investigation. Accordingly, the trial court did not err in allowing Curtiss's testimony.

{¶30} Mother's second assignment of error is overruled.

**Termination of Shared Parenting Plan**

{¶31} In her first assignment of error, Mother contends that the trial court abused its discretion in terminating the shared parenting plan and awarding legal custody to Father. She argues that there was insufficient evidence of a change in circumstances warranting such termination or, in the alternative, that termination of the shared parenting plan was in the best interest of the child.

{¶32} R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children and shared parenting plans. Under R.C. 3109.04(E)(2)(c), a court may terminate "a prior final shared parenting decree" upon the request of one or both of the parents or when the court "determines that shared parenting is not in the best interest of the children." A decision to terminate shared parenting under this section does not require the court to find that there has been a change in circumstances. *In re J.L.F.*, 8th Dist. Cuyahoga No. 97405, 2012-Ohio-1748, ¶ 4, citing *Beismann v. Beismann*, 2d Dist. Montgomery No. 22323, 2008-Ohio-984, ¶ 8. Rather, the court must find that a termination of the shared parenting plan was in the best interest of the child. *Id.*, citing *Clyburn v. Gregg*, 4th Dist. Ross No. 11CA3211, 2011-Ohio-5239, ¶ 24.

{¶33} At the hearing in May 2013, Father testified that the shared parenting plan was not working and that termination of the plan is in A.P.D.'s best interest. He stated that Mother refused to communicate with him in Our Family Wizard, which was the agreed upon method of communication between the parties. Rather, she insisted on communicating through a third-party parenting coordinator or attorney. Father testified

that due to Mother's failure to communicate, the parties were unable to secure health insurance for A.P.D. for several months, which effectively prevented the parties from securing a medical provider in order to provide consistent health care.

{¶34} He further testified that Mother repeatedly scheduled medical appointments for A.P.D. that she was not authorized to make. On one occasion, without notifying Father and in violation of their shared parenting plan, Mother scheduled an appointment for the extraction of A.P.D.'s two front teeth for an injury that occurred almost one year prior to the scheduled appointment. Father secured an emergency order with the court in order to prevent Mother from following through with the procedure.

{¶35} In addition, Mother scheduled appointments for routine medical care with different medical providers with Akron Children's Hospital, in direct contravention of the shared parenting plan. Father learned that A.P.D. had received a flu immunization without his knowledge or authorization. Father testified that he was concerned about the potential dangers in providing medical care for A.P.D. with different providers. He stated that part of this concern was due to the fact that Mother repeatedly refused to share with him information concerning A.P.D.'s medical care, including information on diagnosis or treatment. And when she did seek medical care for A.P.D., Father stated that she often did not follow through with the recommendations of the medical provider. Finally, Father stated that Mother failed to present A.P.D. for scheduled appointments

with medical providers on approximately five occasions in the twelve months of the shared parenting plan.

{¶36} Father also testified that he had concerns about Mother's alcohol consumption. He twice attempted to schedule A.P.D. for a test for fetal alcohol syndrome, based upon his conversations with professionals charged with A.P.D.'s care, to which Mother objected. Father testified that on more than one occasion since May 25, 2012, he has observed Mother exhibit alcohol-related behaviors when she has had A.P.D. in her care and when she has arrived at Father's home to pick up the child, as well as engaging in inappropriate telephone conversations with A.P.D.

{¶37} Other concerns to which Father testified included: (1) Mother's refusal to take A.P.D. to the preschool for which Father had paid; (2) Mother's mislabeling A.P.D.'s legal name on his school clothes; (3) Mother's refusal to communicate with Father about the child's household routines; and (4) Mother's refusal to promote a bond between A.P.D. and his extended family members, including the child's paternal grandfather.

{¶38} Mother testified that she viewed the problem with the parties as Father "want[ing] to control all and everything." She stated that she and Father are capable of communicating with the assistance of a third-party parent coordinator. She denied taking actions to interfere with Father's right to schedule medical appointments for A.P.D. Mother admitted, however, to securing a flu immunization and allergy testing for A.P.D.

without authorization to do so. Mother further testified that the driving offense in 2012 for which she was charged was not alcohol-related.

{¶39} Social worker, Angela Curtiss, testified regarding her investigation of Mother, Father, and A.P.D. As we previously stated, Curtiss testified that, based upon her investigation, she became concerned that Mother suffered from possible alcohol abuse and mental health issues that required further assessment. She further testified that she had concerns that A.P.D. was not receiving consistent medical and dental care in both residences, and she recommended that the parties agree upon one pediatric provider and one dental provider.

{¶40} Curtiss also noted her concern regarding the "long history of conflict between both parents involving [A.P.D.] over the years resulting in [A.P.D.] seeing professional service [providers]." She agreed with the previous recommendation from A.P.D.'s mental health provider that the parents should see a high-conflict therapist for assistance in minimizing conflict in an effort to better co-parent their child.

{¶41} Finally, Curtiss testified regarding her in-home visits with each parent. During the visit with Mother, A.P.D. was "very ornery," not following Mother's directives, initially not following Curtiss's directives, and being bossy towards Mother. On the other hand, while visiting with A.P.D. and Father, A.P.D. followed directives, appeared to have structure, and did not exhibit "abnormal defiance."

**{¶42}** Based upon her investigation and the above concerns, Curtiss made the decision to transfer the matter for ongoing services.

**{¶43}** GAL James Schulz testified as a court's witness, over Mother's objections. The GAL had been involved with this case for more than two years. As part of his involvement with the parties, the GAL spoke with the parties and the social worker, and he reviewed numerous records of communications between the parties and between the parties and mental health professionals. He stated that the parents have had an agreement since May 2012, where Father was named residential parent and decision-maker for medical decisions, and Mother has violated the agreement by unilaterally scheduling appointments with doctors and dentists and inadequately communicating with Father. He further stated as follows:

> [T]hese parties are never going to be able to communicate effectively. They haven't been able to communicate effectively with respect to the most important issues with respect to [A.P.D.'s] well-being. They haven't been able to do the exchanges without conflict. They haven't been able to coordinate changes without conflict. They haven't been able to do his medical treatment without conflict.
>
> Everything about this case is another conflict. Shared parenting is not
>
> appropriate in this situation because the parties can't do it.

He therefore recommended that the plan be terminated and Father be designated the residential parent, stating that A.P.D.'s best interest would be served in this manner. He also opined that continued litigation and conflict is not in A.P.D.'s best interest.

**{¶44}** On July 5, 2013, the trial court issued its order granting Father's motion for termination of the shared parenting plan. In its order, the court stated that it considered the testimony of the parties. Specifically, it noted the Father's testimony that "communications with Mother was worse than ever * * * and exceptionally bad regarding health and medical issues." The court also noted the four-month gap in health insurance for A.P.D. and that Mother failed to keep medical appointments.

**{¶45}** The court also considered the testimony of Mother, noting that Mother indicated that modifications were probably necessary and that she was willing to make changes. The court further considered the fact that Mother "agreed that communications were not good but felt that Father was the cause of many of the communication problems."

**{¶46}** Additionally, the court considered the testimony of the social worker regarding her involvement with Mother, Father, and A.P.D., as well as the testimony of the GAL. The court acknowledged that it permitted the GAL's testimony without a written report, indicating that such a report was not required at the time.

**{¶47}** While the court correctly noted that a determination of a change in circumstances is not required in order to terminate a shared parenting plan, the court nonetheless found that circumstances had indeed changed, stating, "Communication between Mother and Father is worse than at the time of the formation of the Shared Parenting Plan, the use of multiple medical specialists was not anticipated and Mother's

potential alcohol problem and potential mental health problems are new issues." Thereafter, the court, having considered "all the facts and circumstances, and * * * the testimony, the exhibits, and the written arguments of Counsel," granted Father's motion.

{¶48} In light of the foregoing, we find the trial court did not abuse its discretion in terminating the shared parenting plan and naming Father legal custodian and residential parent for the best interest of the child. Accordingly, Mother's first assignment of error is overruled.

## Visitation Order

{¶49} In her final assignment of error, Mother contends that the trial court erred and abused its discretion when it issued a visitation schedule absent a hearing or receiving testimony from the parties as to the best interests of the child. We find this argument has no merit.

{¶50} The hearing conducted in May 2013 included testimony from Mother, Father, and the GAL concerning custody and visitation. During the hearing, the GAL testified that he recommended a visitation schedule similar to the schedule proposed by Mother. He testified that he also had prepared a proposed visitation schedule based upon Mother's proposal, in the event the court terminated the shared parenting plan. This proposal, he testified, was not agreed upon by the parties. At the close of the hearing, the court ordered the parties to submit closing arguments on brief.

**{¶51}** In the order of July 5, 2013, in which the trial court granted Father's motion to terminate the shared parenting plan and named Father legal custodian and residential parent of A.P.D., the court ordered the parties to provide an agreed visitation schedule for Mother in light of the termination of the shared parenting plan. In addition, the court ordered the GAL to prepare and file with the court a proposed visitation schedule, "should [the parties] be unable to agree on a schedule." The parties thereafter filed closing arguments, which included a proposed visitation schedule prepared by the respective parties.

**{¶52}** On September 9, 2013, the court issued a ruling with respect to Mother's visitation. In its order, the court noted that it reviewed the parties' and the GAL's proposed visitation plans.[4] Thereafter, the court set forth a visitation schedule and permitted the parties to adjust the schedule by agreement.

**{¶53}** In light of the above, we find that the trial court did not abuse its discretion in ordering visitation for Mother as outlined in its order. Mother's final assignment of error is therefore overruled.

**{¶54}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[4]While the court and the parties reference the GAL's proposed visitation schedule, the record does not include this document for our review.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR