[Cite as *Jones v. Jones*, 2025-Ohio-5435.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| JUSTIN JONES | : | |
| | : | C.A. No. 2025-CA-16 |
| Appellant | : | |
| | : | Trial Court Case No. 2021 DR 127 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| NEYA JONES (nka CRONK) | : | Domestic Relations) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 5, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

JUSTIN JONES, Appellant, Pro Se
KIRK ELLIS, Attorney for Appellee

EPLEY, P.J.

{¶ 1} Justin Jones appeals from the judgment of the Champaign County Domestic Relations Court terminating a shared parenting plan and granting custody of his children to his ex-wife, Appellee Neya Jones (n.k.a. Cronk). For the reasons that follow, the judgment of the trial court is affirmed.

## I.      Facts and Procedural History

{¶ 2} The record in this case is minimal, so it is unclear exactly when Jones and Cronk were married, how long their union lasted, or when they were divorced (although the trial court case number indicates divorce proceedings began in 2021). The evidence does reflect, however, that Jones and Cronk had two children together, M.J. and A.J., and after the divorce, they operated under a shared parenting plan, though according to the trial court, the children spent most of the time with their mother.

{¶ 3} Despite the ability to see M.J. and A.J. on a regular basis, it appears that Jones moved to Texas in November 2022 to take care of his ailing mother. Although it is unclear exactly how long he was gone—Cronk said more than two years whereas Jones reported an absence of 14 months—both parties agree that Jones saw his children only three or four times during that time frame. When he did see the girls, Jones engaged in dangerous and disturbing behavior centered on alcohol use and abuse.

{¶ 4} At some point, Jones moved back to Ohio and relocated to Wapakoneta, approximately an hour away from M.J. and A.J.'s home in Champaign County. Despite the

2

proximity to his children after his return from Texas, Jones has not seen M.J. and A.J.; Cronk refused to facilitate any visits due to concerns about Jones's alcohol abuse and anger issues.

{¶ 5} On February 8, 2024, Cronk filed a "motion to terminate shared parenting plan" seeking an order making her the residential and custodial parent of M.J. and A.J. She argued that there had been a change in circumstances and that it was in the girls' best interest to award her full custody. The parties appeared in court for a "final evidentiary hearing" on January 22, 2025. There is no transcript of the proceeding in the record (Jones declined to secure it), but the court's journal entry states that it heard testimony from both parties and the GAL. The court also interviewed the minor children prior to the hearing.

{¶ 6} On April 16, 2025, the trial court granted Cronk's motion; the shared parenting plan was terminated; and mother was granted custody. Jones was ordered to complete drug and alcohol assessments, follow the recommendations, and undergo counseling.

{¶ 7} Jones has filed a timely appeal. Cronk did not file a responsive brief.

## II.  Termination of Shared Parenting

{¶ 8} While Jones's brief does not conform to any of the Appellate Rules in terms of form or substance, in the interest of justice, we construe his filing as an appeal of the trial court's decision to terminate the shared parenting plan and grant Cronk custody of M.J. and A.J.

{¶ 9} According to R.C. 3109.04(E)(2)(c), a trial court may terminate a shared parenting plan if it finds that it is in the best interests of the minor child to do so. *Toler v. Toler*, 2011-Ohio-3510, ¶ 11 (2d Dist.). *See also Beismann v. Beismann*, 2008-Ohio-984, ¶ 8 (2d Dist.); *Bruns v. Green*, 2020-Ohio-4787, ¶ 12.

3

{¶ 10} To determine the best interest of the child(ren), the trial court must consider: (a) the wishes of the parents; (b) the wishes and concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with the child's parents, siblings, and other people who significantly impact the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all those involved; and (f) the parent more likely to honor and facilitate court-approved parenting time rights. R.C. 3109.04(F)(1).

{¶ 11} We will not disturb the trial court's decision regarding the reallocation of parenting rights but for an abuse of discretion. *Chelman v. Chelman*, 2008-Ohio-4634, ¶ 17 (2d Dist.).

{¶ 12} In this case, based on the record before us, the trial court did not abuse its discretion when it terminated the shared parenting plan and granted custody to Cronk. As to the first factor, the wishes of the parents, they had different opinions about whether the plan should change. This factor was neutral.

{¶ 13} The second factor, the wishes of the children, favored terminating the plan. Though we do not have direct testimony in the record from M.J. or A.J., the GAL report indicated that the girls had significant concerns about spending time with Jones due to his alcohol and anger issues. "[W]hen he drinks he gets very mad and then starts crying again and then drinks more and, in the morning, he doesn't remember it. I don't want to be around that anymore." GAL Report.

{¶ 14} The children's interactions and interrelationships with their parents, siblings, and others supported termination of the shared parenting plan as well. Both girls reported that they have great relationships with their mother, Cronk, and like living with her and their stepfather. That was not the case, however, with Jones. Both girls had grave concerns about

4

his anger. One reported that she was scared sometimes that Jones would hurt her because "[h]e's a really bad alcoholic." GAL Report. She also revealed that Jones had "threatened to shoot a bullet through my stepdad's eyes." GAL Report. The other girl told the GAL that one time she witnessed a drunken and angry Jones force himself on her mother and that when she pushed him away, "he got really mad and punched her right in the side. . . I did not feel safe when that happened." GAL Report.

{¶ 15} There were also concerning reports about Jones's alcohol use. One of the girls stated that her dad "[n]eeds to stop drinking, stop cussing as much." GAL Report. She went on to recount a time when Jones took them to a hotel and proceeded to get really drunk. When she got up in the night to use the bathroom, she found Jones was urinating in the corner of the room. Both girls reported that Jones would drink and drive with them in the car.

{¶ 16} The next factor, the child's adjustment to home, school, and community, was neutral. Both M.J. or A.J. were happy at home and school, but because Jones was not the residential parent and because he rarely saw them anyway, terminating the shared parenting plan would not change those dynamics.

{¶ 17} The mental and physical health of the parties also supported terminating the shared parenting plan. As a lead-up to the hearing, Jones had a mental health assessment done with Progress Professional Counseling Associates; he was diagnosed with "Adjustment Disorder with mixed disturbances of emotions and conduct," and it was recommended that he attend biweekly outpatient psychotherapy sessions for 90 days. Final Judgment, p. 2. The court noted in its entry (though we have no transcript of the hearing) that Jones testified he did not have any problems and that he had no need for treatment.

5

**{¶ 18}** The last factor, the parent more likely to facilitate court-approved parenting time, leaned against Cronk who had reportedly refused to allow visits with Jones for several months prior to the hearing.

**{¶ 19}** Ultimately, we agree with the trial court that Jones's untreated alcohol and mental health issues had caused fear in the children and that the record favored termination of the shared parenting plan. The trial court did not abuse its discretion in terminating the shared parenting plan and awarding sole custody of the children to Cronk. The assignment of error is overruled.

### III.　　Conclusion

**{¶ 20}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.

6